Good morning, Your Honors. May it please the Court, Randy Kravitz for the appellant, Dr. Clifford Davis. If I may, Your Honors, I'd like to turn to the Booker-Blakely issue. I think one of the most pressing questions in this particular case, as it applies to the Booker issue, is whether, in fact, there was a Sixth Amendment violation in this case. That is, did Dr. Davis's sentence exceed the court's statutory maximum? This is a case that involves drug quantity. So the statutory maximum is that which is commensurate with the quantity that was either found by a jury or admitted to by Dr. Davis. In this case, this was a guilty. Well, if you don't, where is this going to get you? I mean, if you get back in before the trial court for resentencing, what then? The quantity is the quantity. Isn't it going to get up to level 38, or isn't it going to be an 8-year sentence, basically? What's the point of the argument? Well, Your Honor, first of all, we would actually dispute that quantity. Is that well set? First of all, it's really important to remember that Dr. Davis was, in fact, a licensed medical doctor. Well, but you're saying, okay, he's innocent or so forth. And that's a claim, by the way, that's been maintained throughout this, right? The first lawyer said he believed him to be innocent. I understand that. That's why I think, actually, your first argument is the one you ought to address rather than the Booker. Because the Booker, I don't know that the Booker is going to take you anywhere. Even a resentencing under Booker could very well lead to, effectively, a life imprisonment. I mean, this was, as I looked at the sentence, it's a life sentence. Because, in fact, he received, he's 73 years of age. The doctor who testified in the sentencing hearing, who the district court found credible, said that he had about a 5 percent chance of outliving his sentence. And so that's a 95 percent of death. And, therefore, it's a life imprisonment sentence. And the question is whether, effectively, if he goes back to the trial court and the trial court says, well, it's not going to be 8 years, it's 6 years or 5 years, I'm not sure that's going to make a difference. I want to ask you about the first claim. And what I want to know from you is whether you are saying, as I understand you to be saying, that there is a reasonable probability that had his lawyer not been ineffective in the sense of giving him incorrect advice as to the availability of probation or the likelihood of probation, your client would not have pled guilty. Absolutely, Your Honor. And that is exactly our point. And I think what you just said is one of our main arguments to that, which is, if you're Dr. Davis and you're a man in your 70s and you're facing such a long sentence, even under this particular guilty plea, I guess the rhetorical question I would ask is, why would you plead guilty unless you really thought that this plea agreement was really going to limit your life? Well, some people may feel they may plead guilty because, in fact, they think it's at this time of their life it's an appropriate resolution of the problem. They actually stand up and say, I did it, I feel awful about it, and I'm here to take my punishment. But that's not your client. Your client actually said before, he said he's not guilty and he maintained his guilt, his innocence, save and except for the plea colloquy. Absolutely, Your Honor. You're absolutely right. That's what we would maintain is that he did maintain his innocence and that there obviously was some strategic choice on his part to plead guilty. And we would also argue that he did. Well, but are you conceding that the plea colloquy is pretty unassailable? Yes. I mean, it looks like every T is crossed and every I is dotted. Correct. And then he didn't exactly help the situation by there were allegations of more of the same conduct between his plea and his sentencing, too. Right?  In violation of what? Yes, Your Honor. But as far as the plea colloquy is concerned, and you're right, it is pretty unassailable. The district court judge pretty much crossed every T and dotted every I. However, the one thing that the district judge did not bring up in the colloquy was really the likelihood of getting probation. Certainly, the district court judge advised that the maximum sentence he faces is eight years, and she advised him of his rights. Well, but if a person is technically eligible for probation, you tell them the maximum and then you go down, do you have to say I mean, is it required that you say your chances of getting probation are slim and none and slim left town? Well, I think that's I mean, you know, obviously he was technically eligible. He got a little less technically eligible by doing the same thing between his plea and sentencing. That didn't I'm sure his lawyer wasn't real happy about that. Right, Your Honor. I guess if not even probation, a minimal sentence. And I think and remember that the district court judge did in fact find that his attorney was ineffective for what's called a gross mischaracterization of Right. So your argument is not that the district court judge did anything wrong in the plea colloquy. She did a terrific job in the plea colloquy. She dotted all the I's and the T's. What your argument is, is that she could, after finding, after finding that the attorney rendered ineffective assistance of counsel, she couldn't then find that there was no prejudice. Because in fact, one can't follow from the other in the context of this case where you have a person who is facing what effectively is a life sentence. Absolutely, Your Honor. That's your argument. That is our argument. Absolutely. Okay. And that Not that the judge did anything wrong in the plea colloquy. Right. You're right, Your Honor. It's just that the plea colloquy didn't do anything, nor would you expect it to do anything to alleviate that prejudice. I mean the Well, it could theoretically, depending on what the judge said. For example, a judge could, and I've seen records where this has happened, say, I don't know what you've discussed with your lawyer, but I'm telling you right now that the likelihood is you're going to get at least five years. Do you understand that? Notwithstanding anything nice you might have heard elsewhere. I mean, I've seen that. So it isn't, it isn't impossible, I guess. And actually it's done all the time. I mean, as Judge Graver points out, the, for example, in the Ruba Calva case, an earlier case that's cited, where he's told one thing by his lawyer. The judge actually corrects it. And the judge says, but in this case, in Ruba Calva, you can get consecutive sentences. So she, the judge, I don't know, I think actually it was Judge Aguilar, he corrected the misstatement made by the lawyer, arguably made by the lawyer earlier. But here, what you're saying is there's no way the judge in this case could have corrected the advice, because not knowing what the advice was, there was no way she could have corrected the advice that probation was a likely alternative, because it would have called for a 27 to 30, a 27 or so level departure. And that's somewhat unusual, even in California. Yeah, exactly. You're right. I think it would be a real stretch for us to blame the district court judge for the misadvice that he got. And there's no way to do, I don't want to even approach that argument. So you're right, Your Honor. Perhaps the district judge could have spoken to Dr. Davis and explained in a little more detail what his chances were. But I don't want to take the district court judge to task for that. It would take his attorney to task for that. What exactly did the district, because obviously the defendant said he was promised probation. And the lawyer said, I never promised you probation. So what exactly did the court find in terms of, because there's a factual finding there, right? There was, Your Honor. There was obviously a factual discrepancy between what Dr. Davis testified to and what Mr. Dudley, his former attorney, testified to. And the district court judge said, you know, as far as my credibility assessment, I have no reason to disbelieve his lawyer. So I'm not going to go so far as to believe that. And what did the lawyer say that he told Dr. Davis? He said he told Dr. Davis the range that he could have gotten from probation to eight years. And I would, I only have a few more seconds. I would also like to add that one thing that Dr. — that Mr. Dudley, the attorney, did agree with Dr. Davis was that Dr. Davis didn't really have too much time before he went in to plead guilty to really look at the actual plea agreement. So I think there is evidence to support the fact that this was somewhat of a rush job. And I think what that's — How long had the case been going on? It wasn't — that wasn't a rush job. No, no. The case had been going on for a while. You're absolutely right. But I think as far as the plea was concerned, I believe Dr. Davis, first of all, thought he was going into a bail revocation hearing at the time. I see I'm out of time. So unless there are any more questions, thank you. Thank you. We'll hear from the government. Mr. Chang. May it please the Court, Ronald Chang for the United States. The first of the three issues raised by the defendant concern the defendant's claim that he should have been able to withdraw his guilty plea because of trial counsel's ineffective assistance regarding the consequences of the plea. The court — the district court conducted a thorough hearing and a lengthy order in which it resolved a number of factual disputes. Among those factual issues that the court resolved was that the defendant was not credible in his claim that counsel had promised him a term of probation. The only finding that the court made regarding counsel's performance that was a predicate for its finding as to deficient performance was that counsel did discuss the possibility of probation, but not that he promised him that the defendant was going to get probation or that it was likely. And that was an unrealistic possibility, wasn't it? Not necessarily. Well, the court made that conclusion. But what's your conclusion? Our contention is that while it would have been preferable if counsel had said that under the guidelines. No, no. What's your conclusion as to whether that's a reasonable possibility? Our conclusion as to whether that's a reasonable possibility, I think, is that it was a reasonable possibility, and that's borne out by what subsequent defense counsel did. What subsequent defense counsel did in their sentencing position was to accept the not from level 38, which would be a considerably higher guideline level. And the reason for that is because of the operation of Chapter 5G of the guidelines as well as the authority that we pointed out from that point. So you disagree, then, with the court. The district court found that the advice given by the lawyer constituted a gross mischaracterization of the likelihood. Yes. You disagree with that finding. Yes, we do. And that's the position that we put in our briefs, that that is a legal determination made by the court. The factual predicates are undisputed. Now, let me ask you another question. Do you think there's a difference in the standard that one uses in — well, what's my question? There's a difference in the standard that the court uses in assessing whether or not counsel rendered deficient performance. No, actually, that's okay, but that wasn't exactly my question. I'm sorry. My question was whether there's a different standard in allowing a defendant to withdraw his plea pre-sentence versus post-sentence. I don't believe so, Your Honor, in this circumstance, because — Well, wait. What is the law of this circuit? Well, actually, Your Honor, I believe Your Honor is correct. I believe there is authority that says when defendant raises a claim regarding withdrawal of a plea based on a legal misunderstanding or a legal error or new case law, that this Court has permitted the plea to be withdrawn. Or any other reason that did not exist when the defendant entered his plea. That's correct. But I'm not certain that this is a reason that did not exist, because the argument could be made based upon the available case law that the departure began from a level of 96 months. To finish the thought, subsequent defense counsel, based upon that, argued the same bases that were preserved by defense counsel, original defense counsel, in the plea agreement. And from that argued that a departure was warranted to a level that would permit a sentence of home detention. And so subsequent defense counsel, whose performance is not being taken at issue here, made the same argument that Dudley preserved. Do you believe that the defendant, if told that probation was an unlikely prospect under the law, may very well have decided not to plead guilty in light of the fact that if he didn't get probation, he could have gotten a sentence that amounted to a life sentence? I believe that in these circumstances, the defendant would have still gone ahead with the guilty plea. And I think that's demonstrated by the Rule 11 colloquy itself, where the court made clear to the defendant that it could impose a sentence up to the maximum. But he was told in the colloquy, you can't use the colloquy to bootstrap your argument, because while the colloquy may have been perfect, he said that he had this colloquy with the understanding that his lawyer told him. He said something different, slightly different, a stronger argument, but even accepting the one the district court found. He took the colloquy with the understanding that his lawyer said that probation was a possibility. That's correct, Your Honor. But the court also made clear. Now, if he thought that probation was a possibility and he was wrong, are you certain? Would you say, or put it another way, would you say that there's not even a reasonable probability that he wouldn't have pled guilty, that he would have gone in and gone for a life sentence if, in fact, he thought that he couldn't get probation? I think the record does make that clear, because in the context of the same colloquy, not only did the court say, I can sentence up to the maximum, but the defendant was also told, and your guideline level is going to be considerably higher than that. And so the reasonable defendant would have taken from that that I am going to be at the top. And by the way, oh, it's the reasonable defendant. So you say it's an objective test. Are you certain of that, too, that it's not a subjective test? It may be subjective. Then if it's subjective, then it's not the test of whether a reasonable person would have done it. It's a test of whether he would have done it. All right. If we take it as the subjective defendant, then this Court made the finding that this defendant understood what was happening at the Rule 11 colloquy. It wasn't just a matter of the Court covering all the bases in Rule 11. It was a matter of this defendant understanding and himself knowing and voluntarily entering into that plea. And so that's why we would contend that this defendant did understand what he was doing. And even understanding that the sentence could be 8 years and effectively a life sentence, he still went ahead and acknowledged his conduct that led to the sentence that was ultimately imposed. That would be our position with respect to the first issue. And, again, we would maintain the position that the district court's conclusion that defense counsel grossly mischaracterized the sentence, in fact, can be reviewed de novo by this Court, and that the Court should come to a different conclusion. But even if that's the case. And we could also review de novo, can't we? If we can review that de novo, we can certainly review the de novo, the district court's finding that there was no prejudice. I don't believe so, because that, I do believe, is a factual matter, because the Court made a number of findings as to. How can the two prongs of Strickland be treated differently from the standard of review purpose? That is, if one, if the ineffective assistance piece is to be reviewed de novo, why wouldn't the prejudice piece? And conversely, if you think of them as facts, presumably they would still have the. That may very well be. But I believe that the prejudice prong is premised on a number of factual determinations made by the Court, specifically the defendant's understanding and the lack of credibility in his assertions as to the promise, as to his maintenance of his belief that he truly was innocent. The Court at length discussed that in its order. And so based upon that, given that the defendant had the understanding of the proper penalties and the consequences of the plea, the Court could determine, based on all that, even if the latter conclusion is reviewed de novo, the Court concluded properly that the defendant was not prejudiced. And so that would be our contention as to ---- Let's say that the district court found actually that the defendant, that the lawyer promised him probation. Let's say he promised him probation. Would your position be any different? I think we'd have a much more difficult road. But in this circumstance ---- We have the same plea colloquy. We have the same plea colloquy. The defendant said ---- the attorney went in and said, look, I want to tell you, I've had a lot of these cases. You're getting probation. You have an extraordinary ---- you have all these reasons for a downward departure. I want to tell you, I believe you're going to get probation. If defense counsel had said that and defendant's contention was persuasive, that based on that, it didn't have to believe anything that the Court would say, that would be a different situation. But on the other hand, if the Court concluded, you may have been promised that. As a factual matter, I determined you were promised that. But everything that I said set the record straight. And so under cases like Chua, Hahn, Moe, and Duganere, any error was corrected, then yes, Your Honor, that would ---- But every error ---- the Chua case, every error wasn't corrected because the district court judge, and it's no fault of hers, couldn't ask the key question, which is did your lawyer discuss with you the fact that probation is virtually out of the question? That wasn't said. That wasn't said. But I don't believe it's getting back to this case. I don't believe that is necessary. So there's no way to correct it. There's no way for the district court judge to correct it. As the other cases deal with, there are corrections that a district court judge can make. Here she's not to be faulted, but she can't correct it. And the interesting thing is that for Rule 11, for withdrawal of a plea, the test isn't whether you can establish a constitutional violation, whether you can establish that the plea is involuntary. The question is whether there exists a fair and just reason. So then you have to take a look and see whether or not it's a fair and just reason to allow withdrawal of a plea if the lawyer gives a gross mischaracterization of what the range of possibilities are. Isn't that the inquiry? Well, I believe certainly whether there is a fair and just reason is the inquiry. But because the Court made the findings that, in fact, counsel did not promise him probation, did not say probation was likely, but only said that it was a possibility, one, there is no error. And second, the Court's advisements by making clear to the defendant that a sentence at the top was within its discretion and, moreover, because of the guideline exposure, was much more likely than anything else. Based on all of that, as well as the other factors discussed in the district court's order, we believe that affirmance is the proper result in this case. I see my time has expired. Unless there are other questions, I'll submit on the arguments presented. Thank you. You may have a minute for rebuttal. The government took some extra time and we asked a lot of questions. If you want it, you may have a minute for rebuttal. Okay, thank you. The case just argued then is submitted. And we will turn to United States v. Powers.
judges: Graber, Callahan, Breyer